Our final case for argument today is 24-2292 NimbeLink Corp. v. Digi International. Mr. Panabin, did I say that right? Padmanabin. Okay, thank you. May it please the Court. Your Honors, the District Court made two errors. The first one is a patent law error, and the second one, also important in this appeal, is an error on the adequacy of the complaint. Let me address the first error. The District Court erred in holding that the term space-efficient cellular modem device is indefinite. The term at issue is a term of degree. As such, as this Court has made clear, the specification is key. And in fact, the District Court found— To be clear, you're starting with what the claim should—how that preamble should be construed. Are you accepting that it is, in fact, a limitation? Um, no, Your Honor. Well, so let me be clear on that. We think under your Allen Engineering case, it is a limitation if you find meaning. If you find that there is no meaning, that it is actually indefinite, which we don't believe it is, then we don't think it breathes life into the claim. And there's no—and it's not a limitation. What about the fact that it is relied on for antecedent basis by dependent claims? Your Honor, I think there's a case, and I can't come up with it right now, there's a case that we cite in our brief. The dependent claims don't actually use the word space-efficient, and I think that makes a difference in the antecedent basis argument. Well, it does make a difference in whether the preamble is an antecedent. So you're saying some portions of the preamble are limiting, but other portions are not? Yes. Well, the term space-efficient is not being used as an antecedent basis in the rest of the claims. And so—and I think that's consistent with the law from this Court. And that's the reason we're saying there's not—it's not being used for antecedent basis. So on that point, just on the limiting nature of that particular element of the preamble, I don't have the case in my mind either, but I'm pretty sure there is a case that says some elements of a preamble can be. There isn't anything in any of the bodies of the claims that do refer back to space-efficient as a preamble as an antecedent basis, I think. Yes. I think it's all—I think—let me just tell you how—one way that I'm exploring—I don't know what to make of this—is as follows. The spec talks about a number of different properties that could have space-saving effects. Some of them are footprint properties. Some of them are stacking, multi-layer properties. Some are use of two sides properties, all of which could have space-saving effects for, I think, pretty obvious reasons. And I think it's true that at least one of the four or five different properties that could lead to saving of space is in the body of every single claim, including the independent claims. If that's true, then why wouldn't this be a case in which the quite general term space— Space-efficient. Space-efficiency. Space-efficient is not limiting because it's not necessary for any of the structural features. And the general idea conveyed by that term is, in fact, reflected in specific structural features in every single claim. And, Your Honor, we would agree with that. We would agree that it's not necessarily limiting. It is a label. But in this case, the reason we were saying, if you find it to be useful, because the specification really does focus in on this footprint idea, partly because the prior art device has had such a large footprint. And so they teach the XB-sized type devices. And in that— But they don't—I mean, I guess my— Just to be clear about what I've been trying to understand. And its significance, too. Other aspects that are not themselves the footprint can contribute to having a smaller footprint. Yes. Right? By putting, you know, like, you can have a smaller footprint of a house if you have four stories or something.  I thought, as I read your brief, that you agreed that space-efficient was a limitation unless it was indefinite, in which event it wasn't a limitation. And that is how we've argued it, because we believe that— In other words, you say it's a limitation unless it's indefinite. Well, because I think I'm following your rule under Allen Engineering, saying it's a label. We think there's a value to interpreting it and making it a limitation. But as in Allen Engineering, if you find that space-efficient, even with the examples and everything from the specification, is not definite enough and it doesn't provide enough guidance, then we don't think it breathes life into it, because all the other mandatory reasons aren't applicable. The idea that I was exploring is not the same thing as what you just said. That is, the idea I was exploring would be an argument or a way of saying it's not limiting without regard to whether it is indefinite or not, just because it doesn't come under a series of standards we have for limiting things. The structures in the body are complete. There's no antecedent basis. And in fact, every single claim has some structural feature in the body that does fall under the general idea. That's not an argument you have made. That is not an argument we've made, but we— I mean, I don't have a dispute with that argument either. It's true that if you were to interpret the claim that way and say it's not limiting and reverse it, we would be fine with that too. We can live with— But you didn't argue it. No, but we didn't— because we think the fair read of this, based on your case law, in Sonics, it's a term of degree. It is defined by the drawings and the spec and the claims. And we think there is meaning to it, and so it would help. How is it defined by the spec? I mean, because it's an XB factor, that refers to pin placement, not size, right? No, Your Honor. So it refers to— No, standing alone. Standing alone. XB refers to both the footprint— and there's drawing after drawing in the provisional as well as in the spec, where what they're talking about for the Skywire product that they designed, which is where all this started, is that that is considered part of an XB form factor, but it's an XB footprint. And so XB is not just the pins. But the footprint could be anything. I mean, in your product, the footprint is one thing, and digital, digitized, digity, it's another, right? I don't think that's true, Your Honor, because part of what the spec and even the court, when they found that one meaning was the size of the modem, the court even found that references to XB size, the drawings and figures 5, 8, and 10, I think, where they show the actual size as a dimension— That's a digity product, right? I'm sorry? That's the digity product. As a digi product. No, but it refers to a digi product, which the extrinsic evidence also shows at the time of the filing, there's only three sizes. But beyond that, the patent itself shows dimensions for it. Stop. I have a couple of technical questions. You said at the time of the patent, there were only three sizes. What are the three sizes you're talking about? And just give me one second here. Um, I understand there to be three types of XB products. The TH, which is what I think this patent is about, and do you know what I mean by TH? It's XB Pro— Through-hole. There are three types of embedded cellular modems. There's the through-hole, there's the surface-mounted, and then there's the micro-mounted, right? I mean, are you following me? Yep, yep, I'm following you. Are you? Because that's not the way— That is what I think your expert, Mr. Fernand, or Fernald, whatever his name is, that's what I think he's talking about when he talks about the three types. I think he's talking about TH, MMT, and SMT, which is what I understand the technology to be. But my problem is MMT didn't exist at the time of this patent. Only TH and SMT did. So I'm just trying to track what are the three types that he refers to, or what are the three sizes that you just mentioned. So, Your Honor— None of those sizes correspond precisely to the dimensions in your dependent claims, but they're similar. Let me just give you a tiny bit of background, because I understand that in this art, prior to the invention of these embedded cellular modems, that the modems were enormous. We're talking multiple inches by multiple inches each. And this Digi XB wave of invention reduced size with regard to RF. And then your client came around and figured out how to reduce size with regard to cellular. Now, maybe not quite as small as the RFs could be, but your client was able to reduce the size in an embedded cellular modem. That's what I understand the state of the art to be. I understand that from the record from all of the expert declarations and testimony. So tell me what's wrong with that. But what are the three? Tell me what's wrong with my understanding of the technology based on what I've read and what's been presented. But also tell me what are the three? Because the expert talks about three. You just mentioned three. And the only three that I know of— which, by the way, these words don't appear on the record. But the three I know about are TH, SMT, and MMT. And so that is a tiny bit of my mental supplementing of the record. But what I'm trying to do here is to understand what your expert meant when he talked about three, because one of those three did not exist in 2005, didn't come along until much later. So what are these magic three that you just mentioned and that your expert mentioned? So, Your Honor, it's on appendix page 741, paragraph 10. I am right there. I got it open in front of me. Go ahead. Okay. And so what the expert says at the bottom is— so the Nimbling Skybar, which is the product that you've mentioned, is the upgrade, which is the cellular modem, with the XB form factor. And he mentions the size there, 33.6. When you say XB form factor, that's pin placement. When you're talking about form factor, for example, in the throughput modems, it's the typical 10 and 10, each one separated by 2 millimeters. That's what the form factor is. It doesn't matter whether it's a trapezoid or a rectangle. That's what I understand the form factor to be. Tell me if I'm wrong. Correct my technical understanding, especially if you have record evidence. Yep, Your Honor. And so the pins can be part of the form factor, but the dimensions— in other words, the actual footprint is also part of that form factor because that is why when the patent says XB sized, what they're talking about is the footprint, the actual dimensions of the product. And you can look— I agree. I agree. I 100% agree. XB size. The Digi product was revolutionary at the time. I remember it. It was really a big deal to be able to significantly reduce the size of these modems the way they did. Now, theirs were RF, and you all came along and did a cellular version. Also, super cool, by the way. You know, but what I'm— so I get it that when you talk XB, when I hear the word XB, I think small size modem. That's what comes to mind. Digi did a great job with that branding, and that's what comes to my mind. But your dependent claims don't track in size exactly to the XB form that was in existence at the time. Those RF modems were a tiny bit smaller than what your dependent claims claim. Now, in the same general approximate size compared to the two-by-three-inch modems that existed otherwise, but a little bigger. So what do I make of all that? And if you want to— you never did answer my question about your magic number three, so I definitely want you to do that. So, Your Honor, and then if you see below the next sentence, it says Digi XB RF and the XB Pro, and it gives dimensions for those. And those are the three that I'm talking about. Where? I'm in paragraph 10. The last three lines, or the last two lines, you see that we attach a data sheet for the mechanical drawing of Digi XB RF modem and the XB Pro dimensions, and then we lay out the dimensions for them. Do you see that? Only two things. I see RF and I see Pro. You said there's a magic number three. What's number three? You said three, and your expert said three. I can take you through his deposition where he said three. I think he's talking about THSMT and MMT because he's being deposed years later when all three existed. And then the third is the Skywire, because the Skywire is the other one that we have in there. So the NimbleLink Skywire— That's not an XB. The way we filed it for the provisional and for this patent, it was considered part of the XB size. So that's—and actually, that's in paragraph— I mean, that's— Is the NimbleLink Skywire the exact size as the dependent claims? I've got to ask you because you know better than he does. It's not. It's not identical to the dependent. Dependent claims cover a range of the sizes, but the dependent claim is not specific to the XB size. Very close in area to the Claim 7. Claim 6 is about 40 percent larger in area. Yeah. Yeah, it's very close. I mean, it is close. It's close to one. No, it's the 40 percent that I think I'm more interested in. Hang on, let me look at the claim. In what you make of. If you have—right, so the area of the Claim 6 one is, I think, 1,400 square millimeters. The area, I think, of the Skywire 5 is about 975 and 974 and change. So there's about a 40 percent difference. One way to think about what the district court said, just on the footprint side, on the side of things, is, boy, if you can go 40 percent higher, what's the maximum? How does that—how is anybody supposed to know what the maximum is under this term, space efficient, if it's going to be, I don't know, tied to something to the three examples given? And so, Your Honor, it's tied to both the examples and the dependent claims, because it's a first action allowance. It's part of the original disclosure. And so those would be the guidelines and the objective measures that would provide one of skill. But how far can you get from them? So the two XB things, depending on how you count, I think have, you know, in the, you know, low 600s to maybe 800 square millimeters. And that's if you, you know, take the hexagon and fill it out into a rectangle, slightly lower if you don't, obviously. And then the three examples, your Skywire, which is Figure 5, the Claim 7 and 6 get bigger and bigger and bigger until you get to Claim 6, which is 1,400 square millimeters. And if what—and admittedly, I think you have to be able to say, if, you know, space efficiency has a meaning, it's got to be somehow keyed to those examples. You have to include those examples. But how much more? I don't—Your Honor, the way we had always viewed it was we were limited to those examples and that disclosure. We hadn't—we weren't thinking about going beyond those because— Yeah, but somebody else might be thinking of it. That's the whole point of indefinite. It's somebody else. But on the somebody else, the space efficient, the way we've described it and the way we've guided people on it is to say, hey, look at the footprint. The prior art had larger footprints. And we've now given you guidance because we've given you the examples with the dimensions. But wait, the examples aren't referenced in the spec. I'm sorry? The examples are not referenced in the specification. They are—what do you mean? I don't understand that. But they're in Figures 5, 8, and 10. So those— The dimensions are all there. Dimensions are in the figures themselves. And in the text at Column 4. Yeah. And so— Does the spec reference any of the dimensions of the prior art cellular modem ones? The ones that are like dollar size? I take it, but that's— No. Somebody just told me that. They don't—the spec doesn't do anything with the big cellular modems. They don't— I think—and I think that the chief referred to, I think, an idea. If there is a realm of the small XB devices, the RF devices, that are down in the mid to high hundreds range, not three digits yet, but getting close, and the cellular modems are huge, 20 times bigger or something, I don't—in area, then maybe there really is room with getting up to 1,400. And a skilled artisan would know it's a lot more like the XB size than the dollar size. But I don't know where that second comparison comes from. And so, Your Honor, the second comparison, I mean, the— You have a very long list of prior art. Does any of them provide a size of prior art cellular modems so that a skilled artisan might read this and understand? Well, obviously, there's— You've got to be much closer to the Digi-RF size and the size of the examples specifically called out in this patent than to the prior art. It's the van part. I don't have numbers to put on it. And so, Your Honor, the closest would be other than— would be knowledge one skilled in the art would have just because the progression that Chief Judge— Did your expert say, here are rough dimensions of prior art cellular modems? I think he addressed it. Page 740 and 741. I think he talks about the history of it, Your Honor. I just— This is your expert. The patentees were critical of prior art embedded cellular modems in part because they required a large footprint. And he does not specifically call out with specificity any individual prior art cellular modems or point to, for example, which he might have, some of the patents that are listed as prior art on the front page of this patent, which are two old-fashioned cellular modems. The only thing I can add to that is the notice of allowance. The notice of allowance where the examiner said it's the relative size and he was— the closest art that he cited, and I forgot the name of it now, but that is one of the more bigger modems. Okay, the examiner was on 927. So, the prior art— Yeah. And it says the closest prior art is Rofugarin, and that's one of the big ones. Yep, disclosing the cellular modem. Regular cellular modem that's like two and a half inches by four inches, I think, if I remember right. Something in that genre. And then he says, by contrast, prior art doesn't disclose the relative size and overall complete structure of the claimed invention. So, he is expressly comparing it to one of the old, big prior art. And he says the relative size. Okay, why don't we save time? Well, you don't have any time left. I'll give you two more, two minutes for rebuttal. Let's go ahead and hear from opposing counsel. Your Honor, can I get five seconds or 10 seconds to mention the contract issue just in case— Go, one, two, three. Sir, Your Honor, the judge violated the rules under Itfall and Twombly. If you take the allegations as true, we plead breach of contract, and the judge says, it excludes the independent development that the judge is suggesting. And that's the error the judge made.  How do I pronounce your name? Rezavi? Rezavi. Rezavi. Ms. Rezavi. May it please the Court, Catherine Rezavi from Fagery Drinker on behalf of Digi International. The District Court correctly held that Nibling's patents are invalid for indefiniteness and that the complaint failed to plead plausible claims for breach of contract, and Digi would ask that the Court would affirm. My friend on the other side has spent most of his time talking about indefiniteness, so I'm going to start there. And beginning with this idea that the preamble is limiting, the Court correctly noted that Nibling's primary position that they enthusiastically argued in the District Court and to this Court is that the preamble is limiting. That's why, for example, on places like their reply brief at page two, they argue vigorously that the patent describes the embedded cellular modem, the invention of the embedded cellular modem as being space efficient. So that's where we begin. Their backup argument is, as the Court noted, limited to a legal argument that there is a proposition that arises from Allen Engineering that says that a term cannot be both indefinite and limiting at the same time. That is their single argument for this backup argument on the preamble being limiting. Allen Engineering does not say that. No court that we're aware of or that Nibling has cited has ever applied Allen Engineering in that way. Allen Engineering was a case where the term at issue in the context of that patent happened to be both not limiting and indefinite. But to announce... The preamble is limiting or not is a question of law, correct? That's correct, Your Honor. Can an advocate waive a question of law to the court? Do you forfeit it by not raising it? We're being asked to perform a claim construction. Can you waive a question of law? I think, Your Honor, if it hasn't... Often this comes up when something... I'm going to get to this later when something pops up in a reply brief, Your Honor, including questions of law. I think that that can be waived, but I'd also say that this is a combination of a question of law and a question of fact as applied to their particular patent in this case. I... We don't think that Allen Engineering has addressed the issue. In their reply... Judge Toronto raised a point earlier, which I'd love to hear your thoughts on, which are why should space efficient be considered limiting in the preamble? We do have cases that say just because antecedent basis for the word cellular, for example, in the preamble exists later on doesn't mean all the words surrounding it also become limiting. Do you agree with that or do you have some problem with that statement of the law? I don't have a problem with that statement of the law, Your Honor, but I would say that... So the district court recognized multiple different ways that the preamble is limiting in this case. Antecedent basis is part of it. There is no other cellular modem that's referred to in the patent. Right, but the words cellular... The space efficient part aren't part of what's being used for antecedent basis. So the question then becomes does the word space efficient breathe life and meaning into the claim because it isn't part of what is providing antecedent basis for the later reference. So what's the problem with what Judge Toronto said earlier, which is, as I understood it, that the word space efficient don't breathe life and meaning in because you have a complete and operative invention regardless of those words and each of the claims in some manner incorporate tangible physical properties described throughout the spec as creating space efficiency in one of various ways. Here's what I meant by I think this is a combination of a question of law and a question of fact. In theory, plaintiffs could have made the argument that there are multiple different ways of getting at space efficient and if we were to list them, we could then, as Your Honor was doing as an academic exercise, I think, we could look at the independent claim and say, is there an independent claim trying to get to this ultimate question of does the preamble add additional structure? Is it giving us more information about the structure, which we think it does, in which the district court agreed with us on. But here, plaintiffs have not done that. They have argued vehemently. I asked you, I said, fine, I'll accept your representation. Plaintiffs haven't done that. I don't actually think that's relevant to me because I am construing a claim term and I could come up with a whole different construction than either of you propose or I could say it's not limiting. So why don't you focus on exactly my question, which is why should I treat it, regardless of what the plaintiff argued, why should I treat it as limiting if it doesn't breathe life and meaning in, if the claim is entirely operative, structurally sufficient, standalone, and what's more, that this claim, by virtue of other elements within it, demonstrates some degree of space efficiency, either by virtue of having a stacked, you know, layered structure, placement on the pins, XB form, whatever. Through a variety of different ways, the various claims, the de-planted claims achieve space efficiency. Why ought I to treat the word space efficient as some independent limitation to create structure in light of that acknowledgement? To start, the patent describes the present invention as being space efficient. That is meaningful, and this court has relied on that to find a plan limiting. I completely agree with you, but if every single one of these claims has incorporated into it a structural element, which the patent has described in the specification as creating space efficiency or efficiency, why isn't that enough on its own? I'll be honest, when I first read this, first thing I said to my clerk, he can tell you, he's in the back, why in the world are we treating this as a limitation? This feels like every patent preamble I've ever seen that isn't a limitation, and I was a little baffled. But I can also grant you that they seem to treat it as a limitation, so I kind of beat my head against the desk a couple times after that. But you know, fair enough. I don't know that I have to. Whether they did or not doesn't mean I have to, because it is a question of law. The reason that they're calling it limiting over and over again is because they're relying on it to distinguish prior art. We have an inequitable conduct argument. Their entire argument, their defense to that is that they were relying on the space efficient. So that's not in the record,  but just as a practical matter, that's an issue for another day. But they are relying on it. That's why they're here taking it as their primary argument. What I would quibble with factually is that the specification gives us a checklist of different ways that something could be space efficient and that each of those ways is in the independent claim. For example. Oh, no, not each of those ways are in the independent claim. I agree. I agree. Specification talks about multiple ways in which space efficiency or efficiency can be achieved. I 100% agree with that. Why would it have to be that every one of those ways has to be present in the claim? I let me say this. I think none of those ways are present in, for example, independent claim one of the 570 patent. There's no limitation in claim one of the 570 patent that gets at any aspect of size, which is what plaintiff's position is what this means. There's no limitation in any in claim one of the 570 patent that gets at efficient spacing of surface mounted components. We don't see anything in there about height. We don't see anything that gives us illumination of what space efficient could mean in claim one. That's why plaintiffs are hanging their hat on the preamble. That's why, Chief, they're coming to you vigorously saying that this is limiting and why we've ended up in this posture. Well, if what you're saying is correct, then maybe there's a problem with claim one. But like one of the other, just like when I first read this, I'm like, why in the world somebody's saying this is limiting? When I first read this, I said, how in the world could this district court hold all these claims indefinite? Space efficiency is clearly defined by claim number six and seven. So while claim one, maybe you were right on claim one being indefinite, but how could claim six be indefinite? Because claim six needs to be rewritten in independent form and separately analyzed for definiteness. Just because claim one falls doesn't mean claim six falls. If claim six provides the clarity of what is meant by space efficiency in the preamble, because claim six has to be rewritten in independent form to analyze it for indefiniteness, I don't see how anyone could conclude claim six is indefinite. Forget about every other argument in this case. I do not see how claim six or claim seven could ever be deemed indefinite in this case. And here's how I would respond to that. In a case like Niazi, when the court looked at dependent claims and said, here are examples that inform and give us a sense of what this term might mean, pliable or resilient, there was language in the specification that said the materials will make it pliable. The materials will make it resilient, which naturally guides a person skilled in the art to go take a look at those materials. And you can see how the court got there. There is a gigantic missing link in this case. There is not, we're dealing with a two and a half page specification and we are really focusing on about two sentences of discussion that have anything to do with space or efficiency. There's nothing in there that looks like Niazi or that I don't care about the spec. Look at claim six right now. Look at claim six. How can you tell me the word space efficient cellular modem device is indefinite when claim six incorporates into claim one the limitations of the exact length and width dimensions of the cellular modem device? Because can you say that doesn't satiate the need for clarity around the space efficiency? Because there's no disclosure in the specification that length and width inform the meaning of space efficient. And I want to read something to your honor. There doesn't have to be. The claim is read by a person of skill in the art. The spec, if, and forget about a person of skill in the art, which I might even actually technically qualify as, but forget about that for a second. Just a normal human, a space efficient cellular modem device. Forget all the other limitations wherein modem device does not exceed 40 millimeters of width and cellular modem device does not exceed 35 millimeters of length. What's indefinite about that? Well, because, Nimbly, did they ever argue that six and seven should be treated differently than one? No, you're right. Yes, they did. They argued it below and they argued it here by pointing to six and seven and saying, wait, your honor, six and seven give precise dimensions. I would push back, your honor. They have not asked for different treatment of claims six and seven ever in the district court or here. And the point of six and seven is the district court as the reason why the word space efficient could not be held indefinite. Here's what I would say, your honor, on indefiniteness. In their reply brief, page 11, they have told this court, I'm quoting, dimensions are just one way to measure the footprint or size of a device. So I would disagree with the journey to lengthen with as examples. But what they mean by that is you could also, you can give the dimensions or you could say it has an relative XB size. That's what they meant by that. Don't take it out of context. Your honor, they have respectfully not said that and neither does the patent. And that's the situation that we're in. I think they've said it over and over and so is their expert. I think that we are in a situation where, number one, we don't get, we don't think we get to size as the clear and exclusive meaning. We think the district court was correct by saying, when you say size, do you keep meaning footprint? I do not, your honor. Size can be this, it can be this. I'm using size in the way that they do, but all dimensions in the three dimensional world we live in. I think that the most powerful sentence in the district court's opinion is when she got through this question, you know, there's this question of whether we're even talking about any aspect of size, but then she says, it doesn't help you if I agree with you when it says XB size or something that this, that space efficiency is about size because the question remains, what aspect of size are we talking about and where are the objective boundaries for measuring that? That's why I think it's important when NimbleLink is telling us that this is not just about length and width. It could be any other dimension. We don't have, for example, we don't have, even like in the media point case from November, there was a list of various different factors one might consider to try to shed light on what the meaning of optimal or best might mean. The court found in that case that even in that scenario where we have a very clear list, if they kind of depart in different directions and we can't reconcile to them to the same resolution. What they're arguing, you keep focusing on their arguments and I understand why. It's easier to knock those down because their arguments are not super great. But the patent isn't bad. And when you just look at claim six, I don't see how that could be deemed indefinite. When you just look at claim seven, it doesn't matter what they say the word space efficient means. It matters what a POSA reading this cold would understand it to mean. Because the POSA doesn't have them as a reference to chat with. And for that, Your Honor, I would just encourage the court to take a look at the appendix. We've cited this significantly in our brief, at appendix 2149, 2150. And I know we have other citations in our brief. This is the deposition of the expert who wrote that declaration, Your Honor. And we asked him the type of questions that, frankly, we've gotten probably more informed answers from the court today on these. What was in existence at the time of this invention? What do you understand the footprint of an XP form factor to be? Would you refer me to specific spaces where you'd like me to look? And he went way over. Whether you're happy or not, I'm going to give you more time. I don't know if you're happy about that idea, but you can have plenty of time. So don't feel like you have to rush. Yeah, so if we, I'm going to refer now, Your Honor, to the deposition page number. So I'm at appendix 2149. For example, on page 95, we are asking about, at this point, let's start at line five. The context of this,  is that we're asking you, as the identified person skilled in the art, what do you know about the size of prior art devices? We asked, have you done any investigation into whether there are other devices with an XP form factor other than Digi or NimbleLink devices? You asked about three devices,  referenced in paragraph 10. There are. But no, wait, stop, stop. There's a difference between XP form factor and XP size. There just is. XP form factor refers to pin placement or pads. If you're talking about MMT or SMT, you're talking about pads. If you're talking about TH, you're talking about pins. So there's just a difference between form factor. That's not size. That isn't a question related to size right there. Your Honor is articulating a challenge we have had in this case over and over again, because when we are talking about XP form factor, we're using it exactly the way that the patent does. In column five, it identifies XP form factor as the configuration of the pins. So I would agree with Your Honor vigorously on that. In this deposition, we're talking also about form factor as the way this expert is using it. So I think that may be the reason for this. But if I will paraphrase a little, Your Honor, about what's happening on page 95, we are asking this alleged expert who they have brought forward, what do you know about the prior art? He said, and we quote this in our brief, Your Honor, he said he didn't even know what XP was before he started working on the case. He was not in the deposition able to give us examples or any type of objective boundaries. And Your Honor, their expert was doing what they are doing in this case, which is asking the court to accept a claim construction that is impossible to apply. It matters when they say dimensions are not the only way of measuring a form factor because we're trying to decide what counts as prior art, what is in and out. And if we don't have, even from counsel, during this claim construction process, an enumeration of what those others might be. Their proposed claim construction means a space-efficient cellular modem device means a cellular modem device incorporating a multilayer PCB with a footprint consisting of the footprint of an XP form factor. That is footprint. Footprint is clear dimensions. That's area. That's length and width. Nobody's footprint has a height to it. I guess maybe technically it does, but that's not the way we think about a footprint as having a height. We think about having a length and a width. And so that's their claim construction. So I'm misunderstanding how they're not telling you how to measure. This is where it matters what they are saying. In this case, the record evidence from their expert is that footprint means something different. Their expert has said in his declaration and that they have cited it in their brief, for example, opening brief at eight and then also the appendix at 22. This is the district court's opinion. They're calling form factor a family of wireless connectivity devices that share a few form factors. That is shape, size and other. Again, I understand you're fighting their arguments. I get that part, but you're not dealing with the patent. The patent, the XP form. I don't see this expert as saying anything wrong when he uses the term XP form factor. I don't see what you're saying. I see their arguments being somewhat flawed at various times, but I don't. And that's why I see your first. I understand your frustration and I could get why the district court could be frustrated, but I just don't understand how that doesn't. What's wrong with the patent? That's the problem here. Here's what I would say, excluding their arguments, your honor. I'll try my best here is I do think their arguments illuminate the problems that we have here. So that was, for example, in the MediaPoint case recently, the proposed claim constructions of the patentee were found to illuminate the open-endedness of the inquiry. That's front page 1378 from MediaPoint. We think that it matters there. Here's what the technology was. Both the examiner knew it because in the allowance, he said it. He pointed to the cellular modems that are quite large, several inches by several inches. Your client revolutionized the modem industry coming up with this RF modem that was super small in size, which they branded the XP. Awesome invention, but it was only RF. They came along with a cellular version. Cellular can't be as small as RF because of the components necessary, the noise that is created among the various components. It can't be. So they created an RF version. It's a tiny bit larger. I mean, a cellular version, a tiny bit larger than your RF, but the prior art cited on the front page of the patent and that the examiner expressly referenced was huge by comparison. So when you say we don't know what they meant by size, I just, so I understand. I enjoy so much talking about this with the court because you have knowledge. I will say it is critical that we are restricted to the record evidence here. For example, Your Honor, everything I just said to you is what the prosecution did. All I did was look at the prosecution history, look at the same patent. The examiner had a notice of allowance. Did you look at that patent? Because he only cited one piece of prior art and his notice of allowance, and then he said relative size. So if you didn't look at that, that's on you. But if you did look at it, you would know that that prior art patent showed a much larger modem by comparison. Yeah, and Your Honor, what I would just add is that I mentioned earlier briefly, we have an inequitable conduct claim in this case. They did not bring prior art that was in existence before this patent to the patent office that was a much smaller size. So I just want to say, in case it is informing any of the analysis today, this idea that they were first to shrink down a cellular modem is not true. That is a full part of our case that is still active in the inequitable conduct realm. So it's important for me to say that there's a lot of complexity about what was out there. But the way I would— Do you know, so the Rofugaran piece of prior art, which I guess the examiner cited and it's listed with a little asterisk, as cited by examiner, in the patent itself, does it identify the size of the cellular modems? I don't have an answer for you on the disclosure from that prior art patent. That would, I guess, be technically in the record to the extent the record includes the whole prosecution history, right? Yes. Yes, Your Honor. If I may gently add, the examiner's reliance on size, we were talking earlier about whether a preamble is limiting. We have present invention language. We have certain views of antecedent basis, but we absolutely have prosecution history that we think informs the examiner's reliance on some aspect of space efficiency. Do you remember, where is the prosecution history that you think would help support the idea that this two-word phrase is limiting? That citation is not on my one page of urgent citations I prepared for today, Your Honor, so I apologize for the slight delay. If it helps you, I would say that our citations in our response brief would direct the court there, we think. I would also know that the district court relied on the prosecution history specifically in the court's opinion, finding these claims to be indefinite. Do you want to touch on the other issue at all? The breach of contract issue. At a very high level, Your Honor, just to offer the context, this is an appeal from the dismissal of a contract claim from the original complaint. We had a hearing in the district court where the plaintiffs represented to the court they could cure any deficiencies. The court gave them a dismissal without prejudice and they did not act with diligence. By the time they got around to filing their motion for leave to amend, it was denied for untimeliness. They admit that in Nimble Inc.'s opening brief and they're not appealing that today. So that's just a little bit of context that kind of informs what's going on and why is it that we're looking at the sufficiency of allegations and what they would describe as I think they're kind of first shot at it. The second thing I would add on the contract claims is that there's something going on in their reply brief, which I heard two seconds from counsel about just now, where they are asking for the first time for this court to make an inference that the allegations in the complaint support an inference that inequitable conduct, or I'm sorry, that Digi was not capable of independent development. So that is not in their opening brief in this court. This is a new argument in reply. It is also a wildly implausible allegation. I believe that their primary evidence when they're asking the court to say that you have to draw an inference that Digi was incapable of inequitable conduct is the absence of language in the 2015 NDA. The 2015 NDA talks at length about independent development and what would happen if Digi engaged in independent development. We don't think any of their other evidence asking for this gigantic inference in their reply brief gets them there, and they haven't given the court any example of any federal court in this country that has ever taken the type of evidence they're citing, done an inference that Digi had no knowledge, an inference that because we had no knowledge we must have gotten it from them, and then an inference that independent development was off the table. I'm raising this because counsel said he's going to address this, and I want to let the court know our position on it. We just think it's wildly improper for them to be bringing it up in their reply brief and at argument, and we don't think there's any basis for that kind of inference upon inference upon inference. Okay, thank you. Your Honor, I've never said this before, but unless you have questions, I don't have anything more to add on any of the topics because I think you've asked all the questions. Unless you have a specific question for me. Okay, thank both counsel. This case is taken under submission.